**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| DENISE MARIE HENERY | : | |
| 260 Power Street | : | CIVIL ACTION |
| Reynoldsville, PA 15851 | : | |
| | : | NO.: _3:21-cv-48_____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DUBOIS REGIONAL MEDICAL | : | |
| CENTER d/b/a PENN HIGHLANDS | : | **JURY TRIAL DEMANDED** |
| DUBOIS | : | |
| 100 Hospital Avenue | : | |
| Dubois, PA 15801 | : | |
|         and | : | |
| PENN HIGHLANDS HEALTHCARE | : | |
| 100 Hospital Avenue | : | |
| Dubois, PA 15801 | : | |
| | : | |
| Defendants. | : | |

---

## CIVIL ACTION COMPLAINT

Denise Marie Henery (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by DuBois Regional Medical Center d/b/a Penn Highlands DuBois and Penn Highlands Healthcare (*hereinafter* collectively referred to as "Defendants") of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200(d) *et. seq*), and the Pennsylvania Human Relations Act ("PHRA").[1]   As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Western District of Pennsylvania.

5.      Plaintiff properly exhausted her administrative remedies before proceeding in this Court for violations of Title VII and the ADA by timely filing a Charge with the Equal Employment Opportunity Commission and by filing the instant Complaint within 90 days of receiving a notice of case closure and/or right-to-sue letter.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual with an address as set forth in the caption.

---

because of the date of issuance of her federal right-to-sue-letter under the ADEA and Title VII.  Plaintiff's PHRA claims however will mirror identically her federal claims under the ADEA and Title VII.

8.      DuBois Regional Medical Center d/b/a Penn Highland Dubois, a Pennsylvania non-profit corporation, is a hospital affiliated with the Penn Highlands Healthcare system, with an address set forth in the above caption.  Plaintiff was hired through and worked at this address.

9.      Penn Highlands Healthcare, a Pennsylvania non-profit corporation, provides residents with access to hospitals, physicians, a nursing home, home care agency and other affiliates, including DuBois Regional Medical Center d/b/a Penn Highlands Dubois, with an address as set forth in the above caption.

10.     Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

11.     At all relevant times herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff worked for Defendants for approximately 29 years before her unlawful termination (as discussed *infra*) on or about April 15, 2020.

14.     Plaintiff was hired through and worked out of Penn Highlands DuBois hospital located at the above-captioned address.

15.     Plaintiff was originally employed by Defendants as a Registered Nurse ("RN") and then as a Certified Registered Nurse Anesthetist ("CRNA") in Respondent's Anesthesia Department.

16.     At the time of her termination, Plaintiff was supervised by Chief Anesthetist, John Syzmanski (*hereinafter* Syzmanski") and Service Line Director of Anesthesia, Aaron DeVallance (*hereinafter* "DeVallance").

17.     Throughout her employment with Defendants, Plaintiff was a dedicated and hard-working employee who performed her job well.

### -Age Discrimination-

18.     Plaintiff is a 67-year-old female.

19.     During the last several years of Plaintiff's tenure with Defendants, she became aware through observations and my personal experience that Syzmanski and DeVallance clearly favored younger employees, and exhibited clear hostility and animosity toward Plaintiff and other older employees.   For example, but not intended to be an exhaustive list, Syzmanski and DeVallance:

   a.  Treated Plaintiff and other older employees in a rude and demeaning manner;

   b.  Began to pretextually discipline and terminate older employees, in order to replace them with younger new hires or current employees;

   c.  Younger employees were given preferential treatment with regard to vacations and were able to take unscheduled weeks off without repercussions, unlike older employees;

   d.   When Defendants' policies were routinely changed, Syzmanski and DeVallance mockingly informed Plaintiff and other older employees that "it may have been

done a certain way ***back when you started***, but we are doing things this way now";
and

e.  In the year leading up to Plaintff's termination from Defendants, Syzmanski called both Plaintiff and another employee (aged 70s) into his office on separate occasions, asking them both when they planned to retire and how long they "planned to work." [2]  When Plaintiff informed Szymanksi that she had no intention of retiring in the near future, he hostilely advised Plaintiff to be sure she told him at least 3 months in advance.

20.  Plaintiff objected to the aforementioned instances of age discrimination and disparate treatment by Syzmanski and DeVallance for several months but they ignored her concerns and continued to subject her to hostility, animosity, and disparate treatment because of her advanced age.

21.  Thereafter, on or about April 15, 2020, Plaintiff was informed by Human Resources ("HR") that she was being permanently laid off (terminated), purportedly due to the COVID-19 pandemic.

---

[2] It is well recognized that any suggestion an employee "retire" constitutes objective evidence of age discrimination. *See, e.g.*, *Sesso v. Mercy Suburban Hosp.*, 2013 WL 961625, at *4 (E.D. Pa. 2013) (explaining any suggestion that any employee retire is evidence of discriminatory animus based on age and holding such statements are sufficient if credited by a jury to find a termination based upon age discrimination).  Where a plaintiff presents sufficient direct evidence, the Court need not consider whether that claim may proceed under a *McDonnell Douglas* theory.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("'[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.'" (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985))). "[I]n *Gross v. FBL Financial Services, Inc.*, the Supreme Court further held that a plaintiff bringing an age discrimination claim "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 586 (E.D. Pa. 2013)(citation omitted). Direct evidence means evidence sufficient to allow the jury to find that "the 'decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision'" to fire him. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *see also Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002) (same).  Such evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it" when he made the challenged employment decision.  *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995).

22.     Defendants' purported reason for Plaintiff's termination is patently untrue and pretextual, however, because: (1) Plaintiff was a hard-working employee for Defendants with several positive evaluations; (2) following Plaintiff's termination on April 15, 2020, her job duties were given to younger employees with far less seniority, experience, and tenure than she had obtained working for Defendants; (3) several older employees, including but not limited to Certified Registered Nursing Anesthetists ("CRNAs"), were terminated at the same time that Plaintiff was and their positions were given to far younger employees; and (4) following Plaintiff's termination Defendants advertised for new employees in Plaintiff's exact job description and, upon Plaintiff's information and belief,  Defendants also hired several locum (temporary contracted employees) at a much higher hourly rate than Plaintiff was compensated while working for Defendants.

23.     Therefore, Plaintiff believes and avers that she was terminated because of her advanced age in for objecting to/complaining of unfair treatment because of her age.

### -Gender Discrimination-

24.     In addition to the hostile work environment, discrimination, and retaliation that Plaintiff was subjected to because of her advanced age, Plaintiff was also subjected to gender discrimination.

25.     Upon Plaintiff's observations and personal experiences, Defendants' management and other employees favored male employees and exhibited discriminatory animus towards Plaintiff and other female employees, thus creating a very gender-biased workplace.  For example, but not intended to be an exhaustive list:

      a.   Unlike Plaintiff's male co-workers, Defendants' management selectively enforced policies against Plaintiff and other female employees;

b. Unlike Plaintiff's male co-workers, Defendants' management, including but not limited to DeVallance treated Plaintiff and other female employees in a condescending and demeaning manner;

c. Upon Plaintiff's information and belief, all of the Anesthesia Supervisors in all of Defendants' affiliated hospitals/facilities are male;

d. Male employees with less experience than female employees were often promoted to lead or supervisory roles and were able to apply to select new roles, while female employees were not provided the same opportunities. For example, Defendants specifically created a position for at least one male employee, who after being provided with educational opportunities, failed multiple tests/evaluations. Plaintiff requested the opportunity to apply for the created position to DeVallance; however, the position was never posted and the male employee, who had far less seniority, experience, and tenure than Plaintiff was put directly into the position; and

e. Male employees, including but not limited to DeVallance, received poor performance evaluations but were still given promotions, while female employees were penalized and/or prevented from advancing for same.

26. After observing/being subjected to the aforesaid instances of gender discrimination for several months, Plaintiff was abruptly terminated on or about April 15, 2020, for pretextual reasons (discussed *supra*).

27. Upon Plaintiff's information and believe, there were at least 7 male employees in her same department, with far less seniority, experience, and tenure than Plaintiff had obtained while working with Defendants, who were retained over Plaintiff.

28. Plaintiff believes and therefore avers that she was terminated because of her gender.

7

## COUNT I
## Violation of the Age Discrimination in Employment Act ("ADEA")
([1] Age Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
-Against Both Defendants-

29.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30.     During her 29-year tenure with Defendants, Plaintiff had no history of significant discipline.

31.     Plaintiff was treated disparately with respect to policies and termination contrary to individuals substantially younger than her.

32.     Plaintiff objected to the aforementioned instances of age discrimination and disparate treatment by Defendants' management for several months but her concerns were ignored, and Defendants' management continued to subject her to hostility, animosity, and disparate treatment because of her advanced age.

33.     Plaintiff was abruptly terminated on or about April 15, 2020, for pretextual reasons.

34.     Upon information and belief, after Plaintiff was terminated, her work for Defendants was performed by much younger, less experienced individuals who do not possess the level of skill and seniority Plaintiff had obtained working with Defendants.

35.     Upon Plaintiff's further information and belief, following her termination Defendants advertised for new employees in Plaintiff's exact job description and, upon Plaintiff's information and belief, Defendants also hired several locum (temporary contracted employees) at a much higher hourly rate than Plaintiff was compensated while working for Defendants.

36.     Therefore, Plaintiff believes and avers her termination was completely pretextual and that she was really terminated because of her advanced age.

37.     These actions as aforesaid constitute unlawful age discrimination and retaliation under the ADEA.

8

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender Discrimination & [2] Hostile Work Environment)**
**-Against Both Defendants-**

38.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39.     During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her gender.

40.     Plaintiff was abruptly terminated on or about April 15, 2020, for pretextual reasons.

41.     Upon Plaintiff's information and believe, there were at least 7 male employees in her same department, with far less seniority, experience, and tenure than Plaintiff had obtained while working with Defendants, who were retained over Plaintiff.

42.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her gender.

43.     Defendants' actions as aforesaid constitute unlawful discrimination under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive and liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  March 23, 2021